IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| OMEGA PATENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1044-CFC |
| | ) | |
| GEOTAB USA, INC. and GEOTAB, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT GEOTAB USA, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

|  |  |
|---|---|
|  | Karen E. Keller (No. 4489) |
|  | Nathan R. Hoeschen (No. 6232) |
|  | SHAW KELLER LLP |
|  | I.M. Pei Building |
|  | 1105 North Market Street, 12th Floor |
|  | Wilmington, DE 19801 |
| OF COUNSEL: | (302) 298-0700 |
| Michael A. Albert | kkeller@shawkeller.com |
| Hunter D. Keeton | nhoeschen@shawkeller.com |
| Susmita A. Gadre | *Attorneys for Geotab USA, Inc.* |
| WOLF, GREENFIELD & SACKS, P.C. | |
| 600 Atlantic Avenue | |
| Boston, Massachusetts 02210-2206 | |
| (617) 646-8000 | |

Dated: November 2, 2022

# **TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................1
II. SUMMARY OF ARGUMENT ........................................................................1
III. STATEMENT OF FACTS ...............................................................................2
    A. Asserted Patent Claims....................................................................2
    B. Accused Products and Alleged Acts of Infringement .................4
IV. LEGAL STANDARDS....................................................................................5
    A. Motion to Dismiss ............................................................................5
    B. Divided Direct Patent Infringement ..............................................6
    C. Induced Infringement ......................................................................7
V. ARGUMENT ....................................................................................................7
    A. The Asserted Claims Require Not Just a Controller, But Also a Vehicle, and the Complaint Fails To Allege That Any Single Entity Performs All the Limitations of a Claim..........................7
    B. Omega's Complaint Does Not Allege Control By Geotab Over Customers Practicing the Missing Limitations of the Asserted Claims..............................................................................................10
    C. Omega's Induced Infringement Claims Fail For Lack of the Required Claim of Direct Infringement. ....................................12
VI. CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
  774 F.3d 979 (Fed. Cir. 2014) ...................................................................................5

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
  No. 16-455, 2020 WL 1333131 (D. Del. Mar. 23, 2020) ....................................11

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ............................................................6

*Anderson v. Kimberly-Clark Corp.*,
  570 F. App'x 927 (Fed. Cir. 2014) ..........................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6, 8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 5, 6, 9

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011) ............................................................. 1, 6, 10, 12

*Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*,
  No. 18-1899, 2022 WL 767513 (D. Del. Mar. 14, 2022) ....................................13

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014) ................................................................................ 2, 7, 12, 13

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ...........................................................................4, 9

*Omega Pats., LLC v. CalAmp Corp.*,
  920 F.3d 1337 (Fed. Cir. 2019) ..........................................................................4, 9

*Portus Singapore Pte Ltd v. SimpliSafe, Inc.*,
  No. 19-480, 2019 WL 6071180 (D. Del. Nov. 15, 2019) ....................... 6, 10, 11

*Realtime Data LLC v. Array Networks Inc.*,
  556 F. Supp. 3d 424 (D. Del. 2021) ....................................................................12

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353, 1365 (Fed Cir. 2020) ................................................................. 12

*SuperInterconnect Techs. LLC v. HP Inc.*,
    No. 19-0169, 2019 WL 6895877 (D. Del. Dec. 18, 2019) ............................... 7, 13

**STATUTES**

35 U.S.C. § 112 ............................................................................................................. 2

35 U.S.C. § 271(a) .................................................................................................... 6, 11

Pub. L. 112-29, 125 Stat. 284 (Sep. 16, 2011) ........................................................... 3

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

On August 9, 2022, Plaintiff Omega Patents, LLC ("Omega") sued Defendants Geotab USA, Inc. ("Geotab USA") and Geotab, Inc. D.I. 1. The Complaint alleges that the Defendants directly infringe and induce infringement of U.S. Patent No. 8,032,278 ("the '278 Patent"). *Id.*

To date, Omega has served only Geotab USA; accordingly, this motion is filed solely on behalf of Geotab USA. D.I. 5.[1]

Under Rule 12(b)(6), Geotab USA moves to dismiss the infringement claims against it for failure to state a claim. In particular, as discussed in further detail below, Omega's claims fail to allege facts sufficient to state a claim for divided infringement.

II.     **SUMMARY OF ARGUMENT**

1.      Under controlling law for divided patent infringement of device claims (also called joint infringement), a ***single*** party must "put the invention into service," or have control of and obtain the benefit from the system. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Here, the relevant asserted claims all have limitations requiring actions by two distinct entities: (1) the manufacturer and seller of a certain type of vehicle tracking

---

[1] In the event valid service of process were made upon Geotab, Inc., that entity would have (at a minimum and without limitation) the same grounds for dismissal set forth herein.

device, and (2) the customers of that entity when they use the device in combination with their vehicles.  Omega alleges that Geotab USA is the manufacturer and seller of accused devices.  But Omega's Complaint makes ***no*** allegations against Geotab USA's customers or their vehicles, let alone specific and plausible ones.  D.I. 1 at 3-10.  The Court should therefore dismiss the direct infringement allegations for failure to state a claim.

2. Indirect infringement allegations—such as inducement—also fail without an underlying showing of direct infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014).  The Court should thus dismiss those claims as well.  Doing so results in a dismissal of the entire case.

## III. STATEMENT OF FACTS

### A. Asserted Patent Claims

Omega alleges that Geotab USA[2] infringes claim 12 of the '278 Patent, which depends from independent claim 1. D.I. 1 at ¶ 14, pp. 3-10.  A dependent claim "incorporate[s] by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112, ¶ 4.[3]  Geotab will thus address each of claim 1 and claim

---

[2] For simplicity in the present brief, "Geotab" will hereinafter be used to refer to Geotab USA, as that entity is the sole defendant currently before the Court. Should the other defendant be served, future briefs will clarify which entity is being discussed at any given time.

[3] The America Invents Act ("AIA") made certain changes to Section 112 of the Patent Act, effective September 16, 2012.  Leahy-Smith America Invents Act, Pub.

2

12 in turn.

Claim 1 recites[4]:

1. A multi-vehicle compatible tracking unit *for a vehicle* comprising *a vehicle data bus extending throughout the vehicle*, the multi-vehicle compatible tracking unit comprising:
    a vehicle position determining device;
    a wireless communications device;
    a multi-vehicle compatible controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information;
    said multi-vehicle compatible controller to be *coupled to the vehicle data bus for communication thereover* with *at least one vehicle device using at least one corresponding vehicle device code* from among a plurality thereof for different vehicles; and
    a downloading interface for permitting downloading of enabling data related to the at least one corresponding *vehicle device code* for use by said multi-vehicle compatible controller.

Several of these limitations relate not only to the tracking unit and its components, but also to the components of the vehicle, such as the "vehicle data bus extending throughout the vehicle," the "vehicle device," and the "vehicle device code." Prior court decisions relating to this same patent confirm this point. The Federal Circuit has already had occasion to construe the term "vehicle device," as used in the '278 Patent, to mean an "electrical or electronic component *in a*

---

L. No. 112-29, 125 Stat. 284, 297 (2011). Pre-AIA law applies here because the '278 Patent was filed on July 3, 2007, prior to that date. '278 Patent at (22). Apart from the addition of subsection headings to Section 112, the relevant text is identical in both versions of the statute.

[4] Throughout this brief, emphasis is added and quotations and citations are omitted except where otherwise noted.

3

*vehicle* that can be controlled and/or the status thereof read"—excluding insertable telematics devices. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1371 (Fed. Cir. 2021); *see also Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1346-49 (Fed. Cir. 2019). At least one district court construed "device code" to mean a "signal *from* a vehicle device," and Omega agreed on that construction for the '278 Patent. *Omega Pats.*, 13 F.4th at 1371.

Dependent claim 12 adds to claim 1 the requirement of "a housing containing" various components of the tracking unit. '278 Patent, claim 12.

While Geotab reserves the right to address any other claims Omega may assert, the divided infringement analysis would be the same, given the identical claim terms appearing in all independent claims. *See* '278 Patent, independent claim 13 (including identical "vehicle data bus," "vehicle device," and "vehicle device code" limitations); independent claim 18 (same).

B.  **Accused Products and Alleged Acts of Infringement**

Omega's Complaint alleges that Geotab's GO9/GO9+ generation device infringes the '278 Patent's claim 12. D.I. 1 at ¶ 14. The GO device is a compact telematics device that plugs directly into a vehicle's on-board diagnostics ("OBD") second-generation ("OBD-II") port.

As discussed above, claim 12 necessarily incorporates all of unasserted claim 1's limitations, and the Complaint purports to chart both claims. D.I. 1 at 3-

4

10. But the charts specifically refer only to the functionalities of the GO device; indeed, all the various screenshots and descriptions refer only to the GO device's features. *Id.* There is no mention in the Complaint or any of the accompanying claim charts of the *vehicles* the GO device would connect to, nor to who makes the connection, nor who controls those vehicles. *Id.* The Complaint is thus devoid of any allegations as to the second of the two entities whose conduct would be needed—jointly with the first—in order to meet each of the limitations of the claims, even taking all of Omega's allegations as true.

Omega's Complaint further alleges that Geotab *induces* infringement by Geotab's customers, but as noted above an inducement claim requires direct infringement, and the Complaint is devoid of any allegations of any specific facts relating to the claim limitations sufficient to set forth a direct infringement claim. D.I. 1 at ¶¶ 15, 21-29.

IV. **LEGAL STANDARDS**

    A. **Motion to Dismiss**

To survive a motion to dismiss, a complaint must set forth enough facts to state a plausible claim, such that the defendant has fair notice of the claim and its grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014). While the pled facts are assumed true and read in the plaintiff's favor, the allegations must not be

5

conclusory or mere recitals of claim elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555; *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931-32 (Fed. Cir. 2014). Instead, allegations are sufficient ***only*** if (unlike here) the court could draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678; *Anderson*, 570 F. App'x at 931.

### B. Divided Direct Patent Infringement

To be liable for direct patent infringement under 35 U.S.C. § 271(a), all the claim limitations must be "performed by or attributable to a ***single entity***." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). This is true for device or system claims, as asserted here: In order to "use" a system or device, a single party "must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. Where a complaint fails to plausibly allege that a single entity practices the invention, courts dismiss. *See, e.g., Portus Singapore Pte Ltd v. SimpliSafe, Inc.*, C.A. No. 19-480, 2019 WL 6071180, at *5 (D. Del. Nov. 15, 2019) (dismissing for failure properly to allege divided infringement claim "since the Amended Complaint lacks any facts suggesting that Defendant uses… [the accused] device in connection with of the rest of the claimed elements.").

6

### C.     Induced Infringement

To prove inducement, a type of indirect infringement, a plaintiff must first show an underlying act of direct infringement. As the Supreme Court has unmistakably established, "our case law leaves ***no doubt*** that inducement liability may arise if, ***but only if***, there is direct infringement." *Limelight*, 572 U.S. at 920-21. Where a complaint fails to make out a plausible case for direct infringement, the indirect infringement allegations likewise fail. *See, e.g., SuperInterconnect Techs. LLC v. HP Inc.*, C.A. No. 19-0169-CFC, 2019 WL 6895877, at *3 (D. Del. Dec. 18, 2019) (Connolly, C.J.) (dismissing induced infringement claims for failure to plausibly allege direct infringement).

## V.     ARGUMENT

### A.     The Asserted Claims Require Not Just a Controller, But Also a Vehicle, and the Complaint Fails To Allege That Any Single Entity Performs All the Limitations of a Claim.

The asserted claims require that the device or system work not in isolation, but via interaction with a vehicle.

One example is the "vehicle data bus," which appears in several portions of claim 1, *e.g.*, "[a] multi-vehicle compatible tracking unit for a vehicle comprising ***a vehicle data bus extending throughout the vehicle***," and later in the "controller to be coupled to ***the vehicle data bus for communication thereover***" mentioned earlier in the claim. '278 Patent, Claim 1. The "vehicle data bus" limitations are part of the vehicle itself – not of the multi-vehicle compatible controller coupled to

7

the vehicle. '278 Patent, Abstract, 2:53, 3:31-32 ("vehicle data bus extending throughout the vehicle").

Similarly, the "coupled" limitation requires that an entity couple the controller to the vehicle. Omega's Complaint does not clarify which entity, if any, it contends performs this coupling, instead merely alleging in the abstract that the coupling occurs. D.I. 1 at 6-9. The Complaint conspicuously fails to allege that Geotab itself performs the supposed coupling. Indeed, when customers receive a Geotab GO device and choose to install it into their vehicles, that is an act of the customer, not of Geotab. Even taking all the Complaint's allegations as true,[5] it fails to allege that **Geotab** (as opposed to Geotab's customers) connects the accused GO device to the customers' vehicles via the OBD-II port. Nor does the Complaint ever allege that Geotab's **customers** meet the "vehicle data bus" coupling limitation. In short, the Complaint is devoid of any allegation that any single person or entity meets this limitation.

Another example is the limitation "at least one *vehicle device* using at least one corresponding *vehicle device code*." '278 Patent, claim 1; *see also id.* ("a downloading interface for permitting downloading of enabling data related to the at

---

[5] Geotab USA does not concede the accuracy of any of Omega's allegations, but simply assumes, as it must on a Rule 12 motion, that the factual allegations in the Complaint are true solely for purposes of this motion to dismiss. *Iqbal*, 556 U.S. at 678-79.

8

least one corresponding *vehicle device code*"). In a prior litigation involving the '278 Patent, the Federal Circuit interpreted "vehicle device" as an "electrical or electronic component *in* a vehicle that can be controlled and/or the status thereof read," thereby excluding insertable telematics devices like the GO device. *Omega Pats.,* 13 F.4th at 1371. Omega also agreed that a "device code" is met by a "signal *from* a vehicle device." *Id.*, *see also Omega Pats.*, 920 F.3d at 1346-49. The limitation did not refer to those defendants' location messaging units, which connected to a vehicle for tracking. *Omega Pats.*, 13 F.4th at 1371-72. Thus the "vehicle device code" cannot come from the GO device; at most, it could come from a vehicle device that is part of the car. Omega's Complaint simply alleges that the GO device "communicates" with a "vehicle device" using "at least one corresponding vehicle device code." D.I. 1 at 8-9. Notably, it makes no allegations as to who provides the vehicle required by the claims, much less the specific and plausible allegations required by *Iqbal* and *Twombly*.

Even if everything the Complaint alleges were true, the claims require more than just the accused GO device. They also require an entity combining that device with the vehicles. The Complaint ***does not allege Geotab does that***. If Omega's position is that Geotab's ***customers*** do, no such allegation appears in the Complaint. Indeed, the Complaint makes no direct infringement allegations regarding any customer actions. D.I. 1 at 3-10.

### B. Omega's Complaint Does Not Allege Control By Geotab Over Customers Practicing the Missing Limitations of the Asserted Claims.

Omega does not allege that Geotab controls its customers or their vehicles. Nor has Omega alleged—let alone plausibly alleged—that Geotab's customers or their vehicles infringe the claims, because the claim charts make no allegations relating to the customers' actions. D.I. 1 at 3-10. The Complaint thus fails to allege that Geotab "control[s] the system as a whole and obtain[s] benefit from it," and it should thus be dismissed. *Centillion*, 631 F.3d at 1284.

Two other cases in this District recently considered analogous situations, and both dismissed the direct infringement claims. In *Portus v. SimpliSafe*, 2019 WL 6071180, at *1, plaintiff Portus alleged that defendant SimpliSafe's home security systems infringed system claims that called for (1) a remote access device; (2) a connection gateway in the user's premises; and (3) a server outside the user's premises that could connect on demand with the connection gateways. The home security systems included a base station in the user's premises, which could connect to a server, and a user not on the premises could obtain information about the premises via a webpage from the remote access device. *Id.* at *3. SimpliSafe argued that the complaint did not plausibly allege that SimpliSafe used the claimed systems—rather, the end user allegedly did so by providing the remote access device. *Id.* at *4. The Court agreed, finding that "there are no facts alleged

10

supporting the contention that SimpliSafe itself uses the claimed remote access device in connection with operation of the claimed systems…. Since SimpliSafe does not use or put such a device into service, it does not 'use' the claimed systems within the meaning of 35 U.S.C. § 271(a)." *Id.* at *5. The Court thus dismissed the direct infringement claims. *Id.*

Similarly, in *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, C.A. No. 16-455-RGA, 2020 WL 1333131, at *4 (D. Del. Mar. 23, 2020), the claims required a "computer network" and/or "broadcast channels," and would not be infringed if customers performed the final step to assemble the system. On summary judgment, the Court found that while Take-Two made the video game, only the customers could form the claimed systems when they played in online multiplayer modes. *Id.* Accordingly, it found non-infringement. *Id.* at *7.

The facts here are materially the same as those in *Portus* and *Acceleration Bay*. The claims here require not just a multi-vehicle compatible controller (alleged to be Geotab's GO device), but that some specific person or entity take actions to combine such controller with a vehicle with which it interacts. The Complaint does not accuse Geotab of doing so. D.I. 1 at 3-10. And if Omega's theory is that Geotab's customers do so, the Complaint is devoid of any specific, factual allegations that any such customer either provides the vehicle or accomplishes the accused GO device's alleged connection with the vehicle. In

11

short, Omega has not alleged that any one party puts the invention into service, as black-letter law requires. *Centillion*, 631 F.3d at 1284. This Court should dismiss Omega's direct infringement count (Count I) for failure to state a divided infringement claim.

### C. Omega's Induced Infringement Claims Fail For Lack of the Required Claim of Direct Infringement.

Omega also alleges that Geotab indirectly infringes the '278 Patent via inducement, by supposedly encouraging its customers to install and use the accused systems. D.I. 1 at ¶¶ 15, 21-29 (Count II). But absent adequate allegations of direct infringement, an indirect infringement claim cannot stand. *Limelight*, 572 U.S. at 920-21. And as discussed above, Omega alleges no actual facts about the customers' actions. Omega may contend that it is sufficient to make the broad conclusory statement that Geotab's customers "directly infringe" by "installing and using the systems identified," (D.I. 1 at ¶¶ 23-27), but such conclusory allegations, without more, cannot survive a motion to dismiss. *See, e.g., Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)" and affirming dismissal); *Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 435 (D. Del. 2021) (Connolly, C.J.) (dismissing case—where complaint contains "conclusory statements and legal argument… I am to ignore such pleadings in a ruling on a motion to dismiss").

A plaintiff cannot bootstrap its inducement allegations onto an allegation of direct infringement where the plaintiff has not made out a plausible case of direct infringement. *Limelight*, 572 U.S. at 920-21 (liability for induced infringement depends on showing direct infringement). This Court has accordingly dismissed claims of induced infringement where an underlying act of direct infringement was not adequately alleged. *See, e.g., SuperInterconnect*, 2019 WL 6895877, at *3 (Connolly, C.J.) (dismissing both direct and induced infringement claims because, where plaintiff had "not plausibly alleged that [defendant] directly infringes the asserted patents, it cannot plausibly allege that [defendant] induced others to infringe the patents"); *see also Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*, C.A. No. 18-1899-CFC, 2022 WL 767513, at *1-3 (D. Del. Mar. 14, 2022) (Connolly, C.J.) (where defendant was accused of indirect infringement, summary judgment of noninfringement was proper because plaintiff had failed to show adequate evidence of direct infringement).

In short, as Omega has failed to state a claim for direct infringement, its claims for induced infringement also fail. Those being the sole asserted claims, the Court should dismiss the entire Complaint.

## VI. CONCLUSION

For the above reasons, Geotab USA respectfully requests that the Court dismiss the Complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Nathan R. Hoeschen* |
|  | Karen E. Keller (No. 4489) |
|  | Nathan R. Hoeschen (No. 6232) |
|  | SHAW KELLER LLP |
|  | I.M. Pei Building |
|  | 1105 North Market Street, 12th Floor |
|  | Wilmington, DE 19801 |
| OF COUNSEL: | (302) 298-0700 |
| Michael A. Albert | kkeller@shawkeller.com |
| Hunter D. Keeton | nhoeschen@shawkeller.com |
| Susmita A. Gadre | *Attorneys for Geotab USA, Inc.* |
| WOLF, GREENFIELD & SACKS, P.C. |  |
| 600 Atlantic Avenue |  |
| Boston, Massachusetts 02210-2206 |  |
| (617) 646-8000 |  |

Dated: November 2, 2022

## CERTIFICATE COMPLIANCE WITH WORD COUNT

I hereby confirm that this document complies with the type and number limitations set forth in the Court's November 6, 2019 Standing Order. I certify that this document contains 3,083 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables, or the counsel blocks.

                                                 */s/ Nathan R. Hoeschen*
                                                 Karen E. Keller (No. 4489)
                                                 Nathan R. Hoeschen (No. 6232)
                                                 SHAW KELLER LLP
                                                 I.M. Pei Building
                                                 1105 North Market Street, 12th Floor
                                                 Wilmington, DE 19801
                                                 (302) 298-0700
                                                 kkeller@shawkeller.com
                                                 nhoeschen@shawkeller.com
                                                 *Attorneys for Geotab USA, Inc.*