# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OMEGA PATENTS, LLC, <br> a Georgia limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> GEOTAB USA, INC., <br> a Delaware corporation, and <br> GEOTAB, INC., <br> a Canadian corporation, <br><br> Defendants. | Case No.: 1:22-cv-01044-CFC |

## PLAINTIFF OMEGA PATENTS, LLC'S ANSWERING BRIEF IN OPPOSITION TO GEOTAB USA, INC'S MOTION TO DISMISS

BAYARD P.A.

Stephen B. Brauerman (#4259)
Ronald P. Golden III (#6254
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

Dated: November 16, 2022

ALLEN, DYER, DOPPELT + GILCHRIST, P.A.

Brian R. Gilchrist (to be admitted *pro hac vice*) Florida Bar No. 774065
Ryan T. Santurri (to be admitted *pro hac vice*) Florida Bar No. 015698
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, Florida 32802-3791
Telephone: (407) 841-2330
bgilchrist@allendyer.com
rsanturri@allendyer.com

*Attorneys for Plaintiff*
*Omega Patents, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.   NATURE AND STATE OF THE PROCEEDINGS ........................................1

II.  SUMMARY OF ARGUMENT..........................................................................1

III. STATEMENT OF THE FACTS .......................................................................2

    A.   The '278 Patent ........................................................................................2

    B.   The Geotab Products At Issue ................................................................4

IV.  ARGUMENT......................................................................................................5

    A.   The Plain Language of Claims 1 and 12 Do Not Require Vehicle Components ...............................................................................5

    B.   Geotab's Divided Infringement Theories Fail ......................................8

    C.   The Allegations Also Demonstrate Indirect Infringement...................13

V.   CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
  Civil Action No. 16-455-RGA, 2020 U.S. Dist. LEXIS 49607
  (D. Del. Mar. 23, 2020) ................................................................................ 14, 15

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) .................................................................... 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................5

*Fantasy Sports Props. v. Sportsline.com, Inc.*,
  287 F.3d 1108 (Fed. Cir. 2002) ...........................................................................5

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ................................................................ 5, 6, 12

*Intel Corp. v. United States ITC*,
  946 F.2d 821 (Fed. Cir. 1991) .........................................................................6, 11

*Omega Pats., LLC v. Calamp Corp.*,
  13 F. 4th 1361 (Fed. Cir. 2021) .........................................................................11

*Portus Sing. Pte, Ltd. v. SimpliSafe, Inc.*, No. 19-480-LPS-JLH,
  2019 U.S. Dist. LEXIS 198848 (D. Del. Nov. 15, 2019) ..................................13

I. NATURE AND STAGE OF THE PROCEEDINGS

On August 9, 2022, Plaintiff Omega Patents, LLC ("Omega") sued Defendants Geotab USA, Inc. ("Geotab USA") and Geotab, Inc. (collectively "Geotab"). D.I. 1. The Complaint alleges that the Defendants directly infringe and induce infringement of U.S. Patent No. 8,032,278 ("the '278 Patent"). *Id*.

Geotab USA was served on August 12, 2022, and Geotab, Inc. was served on October 28, 2022. On November 2, 2022, Geotab USA filed its motion under Rule 12(b)(6) seeking the dismissal of the complaint for failure to state a claim. (D.I. 9, 10.) This brief is filed in opposition thereto.

II. SUMMARY OF ARGUMENT

Geotab USA filed this motion, offering a tortured theory that claim 12 (and by implication independent claim 1) of the '278 patent somehow require divided infringement. The only way to reach such a flawed conclusion is to selectively omit the plain language of the claims and ignore the specification entirely. Geotab USA's motion treats claim 12 as though it is a method claim, when it is an apparatus claim. A detailed analysis of the claim language and the specification, which Geotab USA avoids in its motion, dooms theories of divided infringement. Geotab also turns to a prior Federal Circuit case involving the '278 patent, claiming it establishes Geotab's "insertable telematics devices" are excluded from

infringement. Ironically, the decision relied on by Geotab affirmed a jury's determination of infringement of the '278 patent against insertable telematics devices under the exact same theory as presented in Omega's Complaint. When the plain language of the claims are read in light of the specification, Geotab USA's arguments fail. The motion should be denied.

III.  STATEMENT OF THE FACTS

A.  The '278 Patent

A fundamental technology associated with the '278 patent is the vehicle's data bus. As explained in U.S. Patent No. 6,011,460 (which is owned by Omega and incorporated by reference into the '278 patent), vehicle manufacturers have sought to reduce wiring complexity and complication by integrating data bus systems into their vehicles. (Ex. A, '460 patent, 1:65-2:8.) Using a vehicle data bus, "various electronic modules or devices may be linked by a single signal wire in a bus also containing a power wire, and one or more ground wires." ('460 patent, 2:14-16.) "Digital messages are communicated to all modules over the data communications bus. Each message may have one or more addresses associated with it so that the devices can recognize which messages to ignore and which messages to respond to or read." ('460 patent, 2:16-20.) Importantly, the inventions in the '278 patent are designed to function with the data bus systems of multiple

different vehicles. U.S. Pat. No. 6,756,885 (also owned by Omega and referenced in the '278 patent) discloses "a multi-vehicle control system whereby a multi-vehicle compatible controller stores a set of device codes for a given vehicle device for a plurality of different vehicles." ('278 patent, 2:29-33.)

The inventions claimed in the '278 patent generally "provide a multi-vehicle compatible tracking unit which may be used to control operable vehicle devices, and/or read information therefrom via the vehicle data communications bus and related methods." ('278 patent, 2:46-49.) Multi-vehicle compatible tracking units like those claimed in the '278 patent can include components allowing the device (a) to determine the position of a vehicle (such as a GPS device), (b) to perform wireless communications, and (c) to send vehicle position information by cooperating with components for vehicle location and wireless communication. ('278 patent, 2:53-58.) Tracking units claimed in the '278 patent can be connected to a data bus, which would be necessary for the tracking units "to control operable vehicle devices, and/or read information therefrom via the vehicle data communications bus." ('278 patent, 2:67-3:3.)

"In all of the embodiments and variations described herein, the tracking device may communicate with one or more other vehicle devices via a vehicle data communications bus." ('278 patent, 1:3.) "The multi-vehicle compatible tracking

3

unit 110 is for a vehicle comprising a vehicle data bus 122 extending throughout the vehicle." ('278 patent, 23:43-46.) "In some embodiments, the at least one vehicle device may be a plurality of vehicle devices that are tested by operation in sequence. For example, the at least one vehicle device may comprise at least one door lock actuator 62. The at least one vehicle device may also comprise the starter interrupt device 66, or the engine remote starter 63 if remote starting is an implemented feature. The at least one vehicle device which is tested, may also be the alarm indicator 67. Accordingly, an installer, for example, can quickly check that the tracking unit has been properly installed." ('278 patent, 6:36-45.)

  B. <u>The Geotab Products At Issue</u>

Omega has alleged that Geotab manufactures, uses, imports, offers for sale and/or sells the Geotab GO line of products, including products such as the GO8, GO9 and GO9+. D.I. 1, ¶12. The GO line of products can be found at https://www.geotab.com/vehicle-tracking-device/. *Id*. As alleged in the Complaint, "GO products are multi-vehicle compatible devices designed to provide vehicle tracking and interface and communicate on the vehicle's bus." *Id*., ¶13. "GO products include both a cellular transceiver and a GPS receiver and send vehicle position information to a user or a monitoring station accessed at users." *Id*.

Omega's allegations – that Geotab's GO products meet all of the limitations of at least claim 12 of the '278 patent (*id.* at ¶14) – must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In particular, Omega's Complaint included a detailed claim chart identifying where each element of the claim is found in Geotab's accused products and citing to documents directly from Geotab. D.I. 1, ¶14. Accordingly, Omega alleges direct and indirect infringement as to Geotab, where the indirect infringement is the result of Geotab's customers' installation and use of the GO products. *Id.* at ¶15.

IV. ARGUMENT

    A. The Plain Language of Claims 1 and 12 Do Not Require Vehicle Components

"[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010), *quoting Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). "[T]o infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan*, 626 F.3d at 1204, *quoting Intel Corp. v. United States ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991).

5

Omega alleges Geotab infringes at least dependent claim 12, which requires all elements of independent claim 1 are also met. Claim 1 states with emphasis added):

> 1. A multi-vehicle compatible tracking unit for a vehicle comprising a vehicle data bus extending throughout the vehicle, the ***multi-vehicle compatible tracking unit comprising***:
> a vehicle position determining device;
> a wireless communications device;
> a multi-vehicle compatible controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information;
> said multi-vehicle compatible controller ***to be coupled*** to the vehicle data bus ***for communication*** thereover with at least one vehicle device using at least one corresponding vehicle device code from among a plurality thereof for different vehicles; and
> a downloading interface ***for permitting downloading*** of enabling data related to the at least one corresponding vehicle device code for use by said multi-vehicle compatible controller.

Claim 1 is directed to a "multi-vehicle compatible tracking unit <u>for</u> a vehicle comprising a vehicle data bus extending throughout the vehicle." Yes, the device recited in claim 1 must be <u>capable</u> of operating in a plurality of different vehicles (i.e. multi-vehicle compatibility), but the claim language does not include the vehicle itself or any component thereof. The operative language of the preamble makes it clear the claim is directed to just the "the multi-vehicle compatible tracking unit comprising," not to any vehicle components. Claim 1 recites the components of the tracking unit: (i) the vehicle position determining device, (ii) the

6

wireless communication device, (iii) the multi-vehicle compatible controller, and (iv) a downloading interface.

Claim 1 recites the capabilities of the multi-vehicle compatible controller and the downloading interface. Geotab seemingly ignores language in the claim: "said multi-vehicle compatible controller **to be** coupled to the vehicle data bus." This is not a method claim requiring actual connections and operation. Instead, the multi-vehicle compatible controller must be capable of being "coupled to the vehicle data bus," consistent with numerous references in the specification describing the intended installation of the tracking unit in different vehicles. *See, e.g.*, '278 patent, 6:23-25 ("The vehicle tracking system 20 includes a number of features that may simplify installation and maintenance."); 6:43-45 ("Accordingly, an installer, for example, can quickly check that the tracking unit has been properly installed."); 8:26-28 ("Another feature of the vehicle tracking system 20 is that the vehicle tracking unit 25 may be readily installed and connected to a vehicle 21…"). To provide multi-vehicle compatibility, the controller of the tracking unit in claim 1 must also be capable of "communication thereover with at least one vehicle device using at least one corresponding vehicle device code from among a plurality thereof for different vehicles." Similarly, the downloading interface limitation also defines a required capability, namely "for permitting downloading

7

of enabling data related to the at least one corresponding vehicle device code for use by said multi-vehicle compatible controller."

The plain language of claim 1 demonstrates that infringement does not require the tracking unit actually be coupled to a vehicle and in operation (though using the GO products in that manner is also infringement). Instead, the claims identify the required structure and the capabilities of the structures in the multi-vehicle tracking unit, namely to be capable of being coupled to a data bus for communication with at least one vehicle device and for downloading enabling data. Claim 12, which is asserted against Geotab, further reinforces this conclusion. Claim 12 states: "The multi-vehicle compatible tracking unit according to claim 1 further comprising a housing containing said vehicle position determining device, said wireless communications device, said multi-vehicle compatible controller, and said downloading interface." Put more simply, claim 12 requires the components of the multi-vehicle compatible tracking unit of claim 1 be contained within a housing. Again, the plain language establishes that neither claim recites or requires vehicle components or installation in a vehicle.

B. <u>Geotab's Divided Infringement Theories Fail</u>

Geotab argues the system requires interaction with a vehicle, but its argument relies on snippets of the claim language removed from the context of the

claim. *See* D.I. 10 at 7. First, Geotab argues the "vehicle data bus" limitations are part of the vehicle itself, yet the claim plainly recites that the claimed vehicle tracing unit is "for a vehicle," but does not require the actual vehicle. *Id.* For example, as shown in the well-pleaded allegations in the complaint, the accused products are designed for being coupled to a vehicle, having a configuration to be installed in a vehicle's standard data bus port[1]:



---

[1] Geotab's documentation explains the installation and even depicts the devices in a vehicle. *See, e.g.*, D.I. 1 at 4, fn. 2.

9

D.I. 1 ¶14. While Geotab argues that infringement requires the product actually be "coupled," the claim language itself does not require the device is installed but instead states the tracking unit is "<u>to be</u> coupled to the vehicle data bus for communication thereover…" As discussed in more detail above, the claim is reciting a capability required (capable of being coupled), not that the device is coupled to a vehicle. Geotab also turns to the term "vehicle device," claiming that the interpretation of this term in prior litigation as a component in a vehicle "excludes insertable telematics devices like the GO device." (D.I. 10 at 9 (citing *Omega Patents, LLC v. Calamp Corp.*, 13 F. 4th 1361 (Fed. Cir. 2021).) This is directly contrary to the holding of the cited *Calamp* decision, which confirmed a jury's finding of infringement of the claims of the '278 patent (including claims 1 and 12) by Calamp's insertable telematics device. *Omega Patents*, 13 F. 4th 1372-73. Moreover, the reference to a vehicle device in the claim again relates to capability, namely that the vehicle tracking unit provides "for communication" with the vehicle device, not that the claim requires communication in order to infringe.

Geotab argues that infringement of this claim requires components of the vehicle, but its arguments are directly contradicted by the plain and ordinary language of the claims. In *Intel Corp. v. U.S. ITC*, 946 F.2d 821, 832 (Fed. Cir.

1991), the Federal Circuit considered infringement of a patent reciting read-only memory of an integrated circuit. The defendant argued its products were not configured to operate in a particular mode when sold there was no infringement. *Id*. However, the Federal Circuit recognized that "because the language of claim 1 refers to 'programmable selection means' and states 'whereby when said alternate addressing mode is selected,' the accused device, to be infringing, need only be capable of operating in the page mode." *Id*. Similarly, in *Finjan*, the Federal Circuit noted the claims at issue described capabilities like "preventing," "forming" and "obtaining;" therefore, to infringe the accused structure need only be capable of operating with the prescribed functionalities. *See Finjan*, 626 F.3d at 1204-05.

      Geotab cites cases for the principle that all claim limitations must be "performed by or attributable to a single entity." *See, e.g.*, D.I. 10 at 6, quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). While this is a true statement of the law, it has no implication here. In *Akamei*, the parties agreed that the defendant performed some steps of a method while its customers also performed other steps of the same claim. *Id*. at 1024. This is the opposite of this action, where Omega has expressly alleged both

11

that Geotab is a direct infringer as well as that its customers are directed infringers (and Geotab is an indirect infringer).

Geotab also relies on *Portus Sing. Pte, Ltd. v. SimpliSafe, Inc.*, No. 19-480-LPS-JLH, 2019 U.S. Dist. LEXIS 198848, at *5 (D. Del. Nov. 15, 2019). This case is distinguishable. First, in *Portus* the factual allegations of direct infringement were limited to use by the end user and there were no factual allegations that the named defendant was a user or otherwise a direct infringer. In contrast, in this case Omega has provided detailed factual allegations on Geotab importing, making, using, selling and offering for sale the GO products. *See, e.g.*, D.I. 1 ¶ 14. Second, in *Portus* the motion to dismiss was denied as to indirect infringement, finding that the allegations of infringement as to the end user (the direct infringer) and the defendant (the indirect infringer) were adequate. In this action, not only does Omega allege that Geotab is a direct infringer, but it also alleges that the end user of the GO products are direct infringers, and further that Geotab indirectly infringes. As explained below, Omega properly alleged indirect infringement.

Geotab also relies upon *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, Civil Action No. 16-455-RGA, 2020 U.S. Dist. LEXIS 49607, at *12 (D. Del. Mar. 23, 2020), which was a ruling on summary judgment rather than in the context of a motion to dismiss. Regardless, the *Acceleration Bay* decision

finds that where the claims recited a computer network, broadcast channels or the end users own gaming hardware, the evidence did not establish that the software manufacturer was a direct infringer, as it only provided the software element. *See id*. In contrast, here the claims do not require components not provided by Geotab, only that the Geotab products are capable of being coupled to and communicating with a vehicle.

### C. The Allegations Also Demonstrate Indirect Infringement

In addition to direct infringement by Geotab in making, offering to sell and selling its GO products, Omega also alleges that Geotab's customers are direct infringers and Geotab is therefore an indirect infringer. *See, e.g.*, D.I. 1 ¶15. In particular, the claim charts providing Omega's allegations of infringement illustrate that the GO products meet all of the elements of claim 12 when installed by Geotab customers as directed in Geotab's instructions, and further allege Geotab's knowledge and intent as required for indirect infringement. *See, e.g.*, *id.* ¶ 14-15. Again, these allegations—which are thoroughly documented with images and links to Geotab's documents—must be accepted as true. Similarly, Omega shows (and links to) installation materials encouraging end users to use the products in a way that infringes, even under Geotab's flawed theories of divided infringement. Geotab's motion should be denied.

V.  CONCLUSION

The plain language of asserted claim 12 (and independent claim 1), as a whole, defines a vehicle tracking unit exactly that Geotab's GO products. Indeed, it is the same form and performs the same functions as other products found to infringe in other litigation (and upheld on appeal to the Federal Circuit). The fact that the claims reference the capabilities of the vehicle tracking unit—i.e. that it is designed to operate in a vehicle—does not somehow transform the claims into requiring the vehicle and its components. Geotab's theory of divided infringement is unsupported and contrary to the plain language of the claims. The motion should be denied.

Dated: November 16, 2022

        BAYARD P.A.

        */s/ Ronald P. Golden III*
        Stephen B. Brauerman (#4259)
        Ronald P. Golden III (#6254
        600 N. King Street, Suite 400
        P.O. Box 25130
        Wilmington, DE 19899
        Telephone: (302) 655-5000
        sbrauerman@bayardlaw.com
        rgolden@bayardlaw.com

        ALLEN, DYER, DOPPELT +
        GILCHRIST, P.A.

        Brian R. Gilchrist (to be admitted *pro hac vice*) Florida Bar No. 774065
        Ryan T. Santurri (to be admitted *pro hac vice*) Florida Bar No. 015698
        255 South Orange Avenue, Suite 1401
        Post Office Box 3791
        Orlando, Florida 32802-3791
        Telephone: (407) 841-2330
        bgilchrist@allendyer.com
        rsanturri@allendyer.com

        *Attorneys for Plaintiff*
        *Omega Patents, LLC*

**Certificate of Font-Type Size and Word Count Compliance**

I hereby certify that the forgoing brief complies with the Honorable Colm F. Connolly's *Standing Order Regarding Briefing In All Cases,* in that it has been prepared with Times New Roman font, 14 point, and the substance of this brief totals 2,855 words according to the word-processing system used to prepare it, which falls within the 5000 word limitation.

Dated: November 16, 2022

                                        */s/ Ronald P. Golden III*
                                        Ronald P. Golden III (#6254)