IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OMEGA PATENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1044-CFC |
| | ) | |
| GEOTAB USA, INC. and GEOTAB, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GEOTAB, INC.'S OPENING BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS FOR INSUFFICIENT
<u>SERVICE OF PROCESS AND FAILURE TO STATE A CLAIM</u>**

OF COUNSEL:
Michael A. Albert
Hunter D. Keeton
Susmita A. Gadre
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
(617) 646-8000

Dated: November 18, 2022

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Geotab, Inc.*

# **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II.    SUMMARY OF ARGUMENT ...................................................................2

III.   STATEMENT OF FACTS .......................................................................3

    A.   Attempted Service on Geotab, Inc. ............................................3

    B.   Asserted Patent Claims...............................................................4

    C.   Accused Products and Alleged Acts of Infringement ................6

IV.    LEGAL STANDARDS..........................................................................7

    A.   Service of Process.......................................................................7

        1.   Motion to Dismiss for Insufficient Service of Process.....................7

        2.   Personal Service on a Canadian Corporation ...................8

    B.   Failure to State a Claim for Patent Infringement ......................9

        1.   Motion to Dismiss For Failure to State a Claim................9

        2.   Divided Direct Infringement.............................................10

        3.   Induced Infringement........................................................11

V.     ARGUMENT .....................................................................................11

    A.   Omega Failed To Properly Serve Geotab, Inc. .......................11

        1.   Omega's Attempted Service on Geotab, Inc.'s Temporary Receptionist Was Invalid Under Ontario Law. ................11

        2.   The Third Circuit Would Rule Similarly on Ontario Law, Based on Precedent Addressing Analogous Rules...........13

    B.   Omega Fails To State a Plausible Claim for Patent Infringement. ..........15

        1.   The Asserted Claims Require Not Just a Controller, But Also a Vehicle, and the Complaint Fails To Allege That  Any Single Entity Performs All the Limitations of a Claim. ..................15

        2.   Omega's Complaint Does Not Allege  Control By Geotab Over Customers Practicing  the Missing Limitations of the Asserted Claims. ........17

        3.   Omega's Induced Infringement Claims Fail for  Lack of the Required Claim of Direct Infringement. .........................20

VI.    CONCLUSION ..................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
    774 F.3d 979 (Fed. Cir. 2014) ................................................................. 9

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
    C.A. No. 16-455-RGA, 2020 WL 1333131 (D. Del. Mar. 23, 2020) ................. 19

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) .............................................................. 10

*Alsco, Inc. v. Premier Outsourcing Plus, LLC*,
    C.A. No. 19-1631-CFC, 2020 WL 4001060, at (D. Del. July 15, 2020), *adopted*
    C.A. No. 19-1631-CFC, 2020 WL 4501920 (D. Del. Aug. 5, 2020) .................... 8

*Anderson v. Kimberly-Clark Corp.*,
    570 F. App'x 927 (Fed. Cir. 2014) .......................................................... 10

*Arbor Plastic Techs., LLC v. Spartech, LLC*,
    C.A. No. 21-11194, 2022 WL 3223986 (E.D. Mich. July 25, 2022) .................. 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 9, 10

*Bodyup Fitness, LLC v. 2080039 Ontario, Inc.*,
    C.A. No. 07-22223, 2008 WL 516996 (S.D. Fla. Feb. 23, 2008) ...................... 13

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) ...................................................... 3, 10, 18, 19

*Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*,
    C.A. No. 18-1899-CFC, 2022 WL 767513 (D. Del. Mar. 14, 2022) .................. 21

*Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*,
    218 F. Supp. 2d 653 (D.N.J. 2002) ........................................................... 9

*Gabros v. Shore Med. Ctr.*,
    724 F. App'x 119 (3d Cir. 2018) ............................................................ 14

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*,
   988 F.2d 476 (3d Cir. 1993) .................................................................................8

*Granger v. Nesbitt*,
   C.A. No. 21-11066, 2021 WL 4658658 (D. Mass. Oct. 7, 2021) ........................12

*Hudson Priv. LP v. Creative Wealth Media Fin. Corp.*,
   C.A. No. 22-5520, 2022 WL 4365573 (S.D.N.Y. Sept. 21, 2022) ......................11

*Jerge v. Potter*,
   C.A. No. 99-0312E(F), 2000 WL 1160459 (W.D.N.Y. Aug. 11, 2000) .............12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) ................................................................................. 3, 11, 20

*Narbut v. Manulife Fin. Corp.*,
   C.A. No. 17-10639, 2020 WL 3577939 (D. Mass. July 1, 2020) .......................14

*Omega Pats., LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021) .......................................................................6, 17

*Omega Pats., LLC v. CalAmp Corp.*,
   920 F.3d 1337 (Fed. Cir. 2019) .......................................................................6, 17

*Portus Singapore Pte Ltd v. SimpliSafe, Inc.*,
   C.A. No. 19-480, 2019 WL 6071180 (D. Del. Nov. 15, 2019).............. 10, 18, 19

*Realtime Data LLC v. Array Networks Inc.*,
   556 F. Supp. 3d 424 (D. Del. 2021) ...................................................................20

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed Cir. 2020) ...........................................................................20

*Snyder v. Swanson*,
   C.A. No. 08-880, 2009 WL 10695345 (D. Del. June 11, 2009) .........................14

*SuperInterconnect Techs. LLC v. HP Inc.*,
   C.A. No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019) .......... 11, 21

**STATUTES**

35 U.S.C. § 112 ..............................................................................................................5

35 U.S.C. § 271(a) .................................................................................................. 10, 18

iii

Pub. L. No. 112-29, 125 Stat. 284, 297 (2011)..........................................................5

**OTHER AUTHORITIES**

*Canada – Central Authority & practical information*, Hague Conference on Private
    and International Law (May 12, 2022)....................................................9

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents,
    art. 10(b), *concluded* Nov. 15, 1965, 15 U.S.T. 2230, 220 U.N.T.S. 127 .............8

**RULES**

Fed. R. Civ. P. 12(b)(5)................................................................. 1, 7, 13

Fed. R. Civ. P. 12(b)(6)...........................................................................1

Fed. R. Civ. P. 4(f)(1). ............................................................................8

Fed. R. Civ. P. 4(h)(1)(B) .......................................................................14

Fed. R. Civ. P. 4(h)(2)............................................................................8

Rules of Civil Procedure, R.R.O. 1990, c. C. 43,
    Rule 16.02(1)(C) (Ont.) .......................................................... 2, 9, 12, 13

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On August 9, 2022, Plaintiff Omega Patents, LLC ("Omega") sued Defendants Geotab USA, Inc. ("Geotab USA") and Geotab, Inc. ("Geotab, Inc., which will also be referred to herein at times as "Geotab Canada") (collectively, "Geotab").[1]  D.I. 1.  The Complaint alleges that each of the Defendants directly infringes and induces infringement of U.S. Patent No. 8,032,278 ("the '278 Patent").  *Id.* This motion seeks dismissal of all claims against Geotab, Inc. for (1) failure of service of process, and (2) failure to state a claim.

First, under Rule 12(b)(5), Geotab, Inc.—a Canadian corporation headquartered in Ontario—moves to dismiss the complaint for insufficient service of process.  As explained below, Omega's purported service is deficient because it never actually served any papers on Geotab Canada at all – at best, service was attempted on a person who is not a Geotab Canada agent for service of process, nor indeed even a Geotab Canada employee.

Second, under Rule 12(b)(6), Geotab USA previously moved to dismiss the infringement claims against it for failure to state a claim (D.I. 9). If and to the extent Geotab Canada were deemed to be properly before the Court (which it is not), Omega additionally fails to allege facts sufficient to state a claim for divided

---

[1] Geotab USA's briefing on its motion to dismiss used the term "Geotab" to refer to solely Geotab USA.  D.I. 10 at 2 n.2.  This and future briefing will refer to each party individually and "Geotab" for both parties collectively. *See id.*

infringement against Geotab Canada for the same reasons as have already been briefed (in D.I. 10) with regard to Geotab USA.  Geotab Canada thus also moves to dismiss the infringement claims on the same grounds, as outlined below.[2]

## II.    SUMMARY OF ARGUMENT

1.    Service on a foreign corporation such as Geotab Canada requires compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") (Exhibits A-B). The Hague Convention allows for service by a process server in Canada, under Ontario's rules of civil procedure.  But service there is valid *only* if it is made on an officer, director, agent, or someone in control or management of the place of business. Rules of Civil Procedure, R.R.O. 1990, c. C. 43, Rule 16.02(1)(C) (Ont.) (Exhibit C). Because Omega served a temporary receptionist who has no such control or management responsibilities, and indeed is not even a Geotab employee, service was insufficient, and the Court should dismiss.

2.    Under controlling law for divided patent infringement of device claims (also called joint infringement), a *single* party must "put the invention into

---

[2] Because Omega asserts the same infringement allegations against both Geotab USA and Geotab, Inc., the divided infringement claims are identical for both defendants. D.I. 1 at ¶¶ 12-29.  Therefore, the divided infringement facts and arguments Geotab, Inc. sets forth in this brief (primarily Statement of Facts Sections III.B, III.C and Argument Section V.B below) are substantively identical to Geotab USA's prior briefing (D.I. 10 at 1 n.1).

service," or have control of and obtain the benefit from the system. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Here, the relevant asserted claims all have limitations requiring actions by two distinct entities: (1) the manufacturer and seller of a certain type of vehicle tracking device, and (2) the customers of that entity when they use the device in combination with their vehicles. Omega alleges that Geotab is the manufacturer and seller of accused devices. But Omega's Complaint makes ***no*** allegations against Geotab's customers or their vehicles, let alone specific and plausible ones. D.I. 1 at 3-10. The Court should therefore dismiss the direct infringement allegations for failure to state a claim.

3.      Indirect infringement allegations—such as inducement—also fail without an underlying showing of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014). The Court should thus dismiss those claims as well. Doing so results in a dismissal of the entire case.

## III.   STATEMENT OF FACTS

### A.     Attempted Service on Geotab, Inc.

Geotab, Inc. is a Canadian corporation headquartered in Oakville, Ontario. Ms. Uju Orebajo works for an employment agency named Randstad Staffing. Declaration of Uju Orebajo, filed herewith ("Orejabo Dec.") at ¶ 3. That company assigned her to provide temporary receptionist services at Geotab Canada for a

period of a few months. *Id.*   Part of her duties are as a front-desk receptionist in Geotab Canada's Oakville office. *Id.* at ¶ 4.  Ms. Orebajo meets the description of the person served in the affidavit of service.  D.I. 12; Orebajo Dec. at ¶ 5.

On October 28, 2022, a process server handed Ms. Orebajo a plain yellow envelope with "Geotab, Inc." written on the front, which contained a copy of the summons and complaint.  Orebajo Dec. at ¶ 6.   The process server did not identify herself by name or provide a business card.  *Id*.  The process server did not ask about Ms. Orebajo's job, or for any other individuals in charge.  *Id*.  Ms. Orebajo is not an officer, director, or agent of Geotab Canada, nor does she have any control or management related responsibilities.  *Id.* at ¶ 7.  Neither does she hold herself out to be any of these things, nor is there anything in the reception area to suggest that Ms. Orebajo is anything except a temporary receptionist working at the front desk of Geotab Canada's Oakville office.  *Id.*

## B.    Asserted Patent Claims[3]

Omega alleges that Geotab infringes claim 12 of the '278 Patent, which depends from independent claim 1. D.I. 1 at ¶ 14, pp. 3-10. A dependent claim "incorporate[s] by reference all the limitations of the claim to which it refers." 35

---

[3] Per note 2, subsections III.B and III.C are substantively identical to the corresponding sections of D.I. 10.

U.S.C. § 112, ¶ 4.[4]  Geotab will thus address each of claim 1 and claim 12 in turn.

Claim 1 recites[5]:

> 1. A multi-vehicle compatible tracking unit *for a vehicle* comprising *a vehicle data bus extending throughout the vehicle*, the multi-vehicle compatible tracking unit comprising:
>> a vehicle position determining device;
>> a wireless communications device;
> a multi-vehicle compatible controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information;
> said multi-vehicle compatible controller to be *coupled to the vehicle data bus for communication thereover with at least one vehicle device using at least one corresponding vehicle device code* from among a plurality thereof for different vehicles; and
> a downloading interface for permitting downloading of enabling data related to the at least one corresponding *vehicle device code* for use by said multi-vehicle compatible controller.

Several of these limitations relate not only to the tracking unit and its components, but also to the components of the vehicle, such as the "vehicle data bus extending throughout the vehicle," the "vehicle device," and the "vehicle device code."  Prior court decisions relating to this same patent confirm this point.

---

[4] The America Invents Act ("AIA") made certain changes to Section 112 of the Patent Act, effective September 16, 2012. Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 297 (2011).  Pre-AIA law applies here because the '278 Patent was filed on July 3, 2007, prior to that date. '278 Patent at (22).  Apart from the addition of subsection headings to Section 112, the relevant text is identical in both versions of the statute.

[5] Throughout this brief, emphasis is added and quotations and citations are omitted except where otherwise noted.

The Federal Circuit has already had occasion to construe the term "vehicle device," as used in the '278 Patent, to mean an "electrical or electronic component ***in a vehicle*** that can be controlled and/or the status thereof read"—excluding insertable telematics devices. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1371 (Fed. Cir. 2021); *see also Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1346-49 (Fed. Cir. 2019). At least one district court construed "device code" to mean a "signal ***from*** a vehicle device," and Omega agreed on that construction for the '278 Patent. *Omega Pats.*, 13 F.4th at 1371.

Dependent claim 12 adds to claim 1 the requirement of "a housing containing" various components of the tracking unit. '278 Patent, claim 12.

While Geotab reserves the right to address any other claims Omega may assert, the divided infringement analysis would be the same, given the identical claim terms appearing in all independent claims. *See* '278 Patent, independent claim 13 (including identical "vehicle data bus," "vehicle device," and "vehicle device code" limitations); independent claim 18 (same).

## C.    Accused Products and Alleged Acts of Infringement

Omega's Complaint alleges that Geotab's GO9/GO9+ generation device infringes the '278 Patent's claim 12. D.I. 1 at ¶ 14. The GO device is a compact telematics device that plugs directly into a vehicle's on-board diagnostics ("OBD") second-generation ("OBD-II") port.

As discussed above, claim 12 necessarily incorporates all of unasserted claim 1's limitations, and the Complaint purports to chart both claims.  D.I. 1 at 3-10.  But the charts specifically refer only to the functionalities of the GO device; indeed, all the various screenshots and descriptions refer only to the GO device's features.  *Id.*  There is no mention in the Complaint or any of the accompanying claim charts of the ***vehicles*** the GO device would connect to, nor to who makes the connection, nor who controls those vehicles.  *Id.*  The Complaint is thus devoid of any allegations as to the second of the two entities whose conduct would be needed—jointly with the first—in order to meet each of the limitations of the claims, even taking all of Omega's allegations as true.

Omega's Complaint further alleges that Geotab induces infringement by Geotab's customers, but as noted above an inducement claim requires direct infringement, and the Complaint is devoid of any allegations of any specific facts relating to the claim limitations sufficient to set forth a direct infringement claim.  D.I. 1 at ¶¶ 15, 21-29.

## IV.   LEGAL STANDARDS

### A.   Service of Process

#### 1.   Motion to Dismiss for Insufficient Service of Process

A defendant may obtain dismissal under Rule 12(b)(5) where it "has not properly been served with process."  *Alsco, Inc. v. Premier Outsourcing Plus, LLC*, C.A. No. 19-1631-CFC, 2020 WL 4001060, at *1 (D. Del. July 15, 2020), *adopted*,

2020 WL 4501920 (D. Del. Aug. 5, 2020) (Connolly, C.J.).  On such a motion, "the party asserting the validity of service bears the burden of proof."  *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488-93 (3d Cir. 1993) (finding plaintiff "failed to serve the Spanish defendants in compliance with either federal, Pennsylvania or Spanish law").

## 2. Personal Service on a Canadian Corporation

As a Canadian corporation, Omega must serve Geotab, Inc. under Rule 4(h)(2), which states that a foreign corporation can be served in any manner prescribed by Rule 4(f).  That rule says service can be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention."  Fed. R. Civ. P. 4(f)(1).

Article 10(b) of the Hague Convention clarifies that it will not interfere with the ability to "effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."  Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, art. 10(b), *concluded* Nov. 15, 1965, 15 U.S.T. 2230, 220 U.N.T.S. 127 (Ex. A). Unless a country explicitly objects, Article 10(b) allows for personal service through the means allowed by each country.  *Id.*  Canada does not oppose this article, thus allowing for service by process servers in Canada in accordance with each Canadian province's laws. *Canada – Central Authority & practical*

*information*, Hague Conference on Private and International Law (May 12, 2022), https://www.hcch.net/en/states/authorities/details3/?aid=248 (Ex. B).

Other courts in the Third Circuit have found it appropriate to look to the service rules of the relevant country to "determine whether that [country] would object to the particular method of service utilized under Article 10." *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D.N.J. 2002).   Here, the relevant rule is Ontario Rule of Civil Procedure 16.02(1)(C), which states that service "shall be made… on any other corporation, by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business."  Rules of Civil Procedure, R.R.O. 1990, c. C. 43, Rule 16.02(1)(C) (Ont.) (Ex. C).

## B.   Failure to State a Claim for Patent Infringement[6]

### 1.   Motion to Dismiss For Failure to State a Claim

To survive a motion to dismiss, a complaint must set forth enough facts to state a plausible claim, such that the defendant has fair notice of the claim and its grounds.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014).  While the pled facts are

---

[6] Per note 2, subsection IV.B is substantively identical to the corresponding sections of D.I. 10.

assumed true and read in the plaintiff's favor, the allegations must not be conclusory or mere recitals of claim elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555; *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931-32 (Fed. Cir. 2014). Instead, allegations are sufficient *only* if (unlike here) the court could draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678; *Anderson*, 570 F. App'x at 931.

### 2.    Divided Direct Infringement

To be liable for direct patent infringement under 35 U.S.C. § 271(a), all the claim limitations must be "performed by or attributable to a ***single entity***." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*). This is true for device or system claims, as asserted here: In order to "use" a system or device, a single party "must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. Where a complaint fails to plausibly allege that a single entity practices the invention, courts dismiss. *See, e.g.*, *Portus Singapore Pte Ltd v. SimpliSafe, Inc.*, C.A. No. 19-480, 2019 WL 6071180, at *5 (D. Del. Nov. 15, 2019) (dismissing for failure properly to allege divided infringement claim "since the Amended Complaint lacks any facts suggesting that Defendant uses… [the accused] device in connection with of the rest of the claimed elements.").

### 3.     Induced Infringement

To prove inducement, a type of indirect infringement, a plaintiff must first show an underlying act of direct infringement.  As the Supreme Court has unmistakably established, "our case law leaves **no doubt** that inducement liability may arise if, **but only if**, there is direct infringement."  *Limelight*, 572 U.S. at 920-21.  Where a complaint fails to make out a plausible case for direct infringement, the indirect infringement allegations likewise fail.  *See, e.g.*, *SuperInterconnect Techs. LLC v. HP Inc.*, C.A. No. 19-0169-CFC, 2019 WL 6895877, at \*3 (D. Del. Dec. 18, 2019) (Connolly, C.J.) (dismissing induced infringement claims for failure to plausibly allege direct infringement).

## V.     ARGUMENT

### A.     Omega Failed To Properly Serve Geotab, Inc.

#### 1.     Omega's Attempted Service on Geotab, Inc.'s Temporary Receptionist Was Invalid Under Ontario Law.

While this District has not yet addressed proper service under Ontario law, others have.  They have consistently held that attempting service on receptionists, secretaries, temps, or others in similar positions is insufficient under Ontario law.  *See, e.g., Hudson Priv. LP v. Creative Wealth Media Fin. Corp.*, C.A. No. 22-5520, 2022 WL 4365573, at \*6 (S.D.N.Y. Sept. 21, 2022) ("U.S. court precedents applying the Ontario service statute have similarly concluded that office assistants, secretaries, and **receptionists were not individuals appearing to be in control or**

*management of a corporation*.") (collecting cases); *Arbor Plastic Techs., LLC v. Spartech, LLC*, C.A. No. 21-11194, 2022 WL 3223986, at *4-6 (E.D. Mich. July 25, 2022) (service on "Production Planner" was invalid, and citing Ontario case law stating that "the Canadian rules do not allow for service on any employee, in any scenario, simply because the process server subjectively believes that employee to be in control… *The Canadian court will not accept service on just any old employee*.") (collecting Canadian cases); *Granger v. Nesbitt*, C.A. No. 21-11066, 2021 WL 4658658, at *5 (D. Mass. Oct. 7, 2021) (where process server knew person served was receptionist, "based on the Ontario Rules, the Court concludes that service was invalid here.") *Jerge v. Potter*, C.A. No. 99-0312E(F), 2000 WL 1160459, at *1 (W.D.N.Y. Aug. 11, 2000) (serving receptionist was insufficient because plaintiff did not allege she met the requirements of Rule 16.02(1)(C) and "the present record indicates that the demands of service under Ontario law have simply not been met.").

Indeed, Geotab is aware of no authority in the United States or Ontario finding that attempted service on a receptionist satisfies Ontario Rule of Civil Procedure 16.02(1)(C), and Omega did not point to any in its affidavit of service. D.I. 12.

The language of the rule is specific and must be strictly met.  For example, service is invalid under Rule 16.02(1)(C) even where an *owner* of a defendant

12

corporation is served, because the owner does not fall under the specific categories listed in the rule. *See Bodyup Fitness, LLC v. 2080039 Ontario, Inc.*, C.A. No. 07-22223, 2008 WL 516996, at *2-4 (S.D. Fla. Feb. 23, 2008).

Here, the process server presented the documents in an envelope to Ms. Orebajo, a temporary receptionist at Geotab Canada **who is not even employed by that company**. Orebajo Dec. at ¶¶ 3, 4, 6. Ms. Orebajo is not an officer, director, or agent of Geotab Canada, nor does she appear to have (let alone actually have) any control or management of the business. *Id.* at ¶ 7. The process server made no attempt to inquire into the nature of Ms. Orebajo's job, such that she could have determined that any of the listed categories applied to Ms. Orebajo. *Id.* at ¶ 6. Because service on a receptionist (or those in similar positions) does not meet the requirements for service under Ontario law—per Ontario case law as well as multiple district courts across the United States—Omega did not properly effect service on Geotab Canada. The Court should thus dismiss Omega's complaint under Rule 12(b)(5).

### 2. The Third Circuit Would Rule Similarly on Ontario Law, Based on Precedent Addressing Analogous Rules.

While no courts in the Third Circuit have expressly addressed Ontario Rule of Civil Procedure 16.02(1)(C), they have addressed similar requirements for serving a corporation under United States Federal Rule of Civil Procedure 4(h)(1)(B). A domestic corporation can be served by "by delivering a copy of the

summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

The Third Circuit, as well as courts in this District, have found service on a receptionist is insufficient. In *Gabros v. Shore Med. Ctr.*, 724 F. App'x 119, 122 (3d Cir. 2018), the process server attempted service multiple times on an administrative assistant and risk manager. The Third Circuit found that there was no evidence that either of the individuals served was an agent or "in charge" of the defendant's place of business. *Id.* The Third Circuit accordingly upheld the dismissal of the plaintiff's claims. *Id.* Similarly, in *Snyder v. Swanson*, C.A. No. 08-880, 2009 WL 10695345, at *2 (D. Del. June 11, 2009), the process server served a secretary at the office of an attorney who had represented defendant in prior lawsuits, and the court found that plaintiff had not properly effected service under Rule 4.

In short, both Third Circuit and Ontario law are clear that service on receptionists is insufficient. This outcome is consistent with other courts around the country. *See* Section V.A.1 above; *see also Narbut v. Manulife Fin. Corp.*, C.A. No. 17-10639, 2020 WL 3577939, at *5 (D. Mass. July 1, 2020) ("Defendant's argument that its senior legal assistant was not the appropriate individual to serve finds support in both the Ontario Rules of Civil Procedure and

14

case law interpreting a similarly worded provision in the Federal Rules [referring to Rule 4(h)(1)(B)]"). The complaint against Geotab, Inc. should therefore be dismissed.

### B. Omega Fails To State a Plausible Claim for Patent Infringement.[7]

#### 1. The Asserted Claims Require Not Just a Controller, But Also a Vehicle, and the Complaint Fails To Allege That Any Single Entity Performs All the Limitations of a Claim.

The asserted claims require that the device or system work not in isolation, but via interaction with a vehicle.

One example is the "vehicle data bus," which appears in several portions of claim 1, e.g., "[a] multi-vehicle compatible tracking unit for a vehicle comprising *a vehicle data bus extending throughout the vehicle*," and later in the "controller to be coupled to *the vehicle data bus for communication thereover*" mentioned earlier in the claim. '278 Patent, Claim 1. The "vehicle data bus" limitations are part of the vehicle itself – not of the multi-vehicle compatible controller coupled to the vehicle. '278 Patent, Abstract, 2:53, 3:31-32 ("vehicle data bus extending throughout the vehicle").

Similarly, the "coupled" limitation requires that an entity couple the controller to the vehicle. Omega's Complaint does not clarify which entity, if any,

---

[7] Per note 2, this divided infringement argument (i.e., Part V.B) is substantively identical to Geotab USA's prior briefing. D.I. 9-10.

it contends performs this coupling, instead merely alleging in the abstract that the coupling occurs.  D.I. 1 at 6-9.  The Complaint conspicuously fails to allege that Geotab itself performs the supposed coupling.  Indeed, when customers receive a Geotab GO device and choose to install it into their vehicles, that is an act of the customer, not of Geotab. Even taking all the Complaint's allegations as true,[8] it fails to allege that ***Geotab*** (as opposed to Geotab's customers) connects the accused GO device to the customers' vehicles via the OBD-II port.  Nor does the Complaint ever allege that Geotab's ***customers*** meet the "vehicle data bus" coupling limitation.  In short, the Complaint is devoid of any allegation that any single person or entity meets this limitation.

Another example is the limitation "at least one ***vehicle device*** using at least one corresponding ***vehicle device code***."  '278 Patent, claim 1; see also *id.* ("a downloading interface for permitting downloading of enabling data related to the at least one corresponding ***vehicle device code***").  In a prior litigation involving the '278 Patent, the Federal Circuit interpreted "vehicle device" as an "electrical or electronic component ***in*** a vehicle that can be controlled and/or the status thereof read," thereby excluding insertable telematics devices like the GO device. *Omega*

---

[8] Geotab does not concede the accuracy of any of Omega's allegations, but simply assumes, as it must on a Rule 12 motion, that the factual allegations in the Complaint are true solely for purposes of this motion to dismiss.  *Iqbal*, 556 U.S. at 678-79.

*Pats.*,13 F.4th at 1371.  Omega also agreed that a "device code" is met by a "signal *from* a vehicle device."  *Id.*, see also *Omega Pats.*, 920 F.3d at 1346-49. The limitation did not refer to those defendants' location messaging units, which connected to a vehicle for tracking.  *Omega Pats.*, 13 F.4th at 1371-72. Thus the "vehicle device code" cannot come from the GO device; at most, it could come from a vehicle device that is part of the car.  Omega's Complaint simply alleges that the GO device "communicates" with a "vehicle device" using "at least one corresponding vehicle device code."  D.I. 1 at 8-9.  Notably, it makes no allegations as to who provides the vehicle required by the claims, much less the specific and plausible allegations required by *Iqbal* and *Twombly*.

Even if everything the Complaint alleges were true, the claims require more than just the accused GO device.  They also require an entity combining that device with the vehicles.  The Complaint ***does not allege Geotab does that***.  If Omega's position is that Geotab's ***customers*** do, no such allegation appears in the Complaint.  Indeed, the Complaint makes no direct infringement allegations regarding any customer actions.  D.I. 1 at 3-10.

### 2.    Omega's Complaint Does Not Allege Control By Geotab Over Customers Practicing the Missing Limitations of the Asserted Claims.

Omega does not allege that Geotab controls its customers or their vehicles. Nor has Omega alleged—let alone plausibly alleged—that Geotab's customers or

their vehicles infringe the claims, because the claim charts make no allegations relating to the customers' actions. D.I. 1 at 3-10. The Complaint thus fails to allege that Geotab "control[s] the system as a whole and obtain[s] benefit from it," and it should thus be dismissed. *Centillion*, 631 F.3d at 1284.

Two other cases in this District recently considered analogous situations, and both dismissed the direct infringement claims. In *Portus v. SimpliSafe*, 2019 WL 6071180, at *1, plaintiff Portus alleged that defendant SimpliSafe's home security systems infringed system claims that called for (1) a remote access device; (2) a connection gateway in the user's premises; and (3) a server outside the user's premises that could connect on demand with the connection gateways. The home security systems included a base station in the user's premises, which could connect to a server, and a user not on the premises could obtain information about the premises via a webpage from the remote access device. *Id.* at *3. SimpliSafe argued that the complaint did not plausibly allege that SimpliSafe used the claimed systems—rather, the end user allegedly did so by providing the remote access device. *Id.* at *4. The Court agreed, finding that "there are no facts alleged supporting the contention that SimpliSafe itself uses the claimed remote access device in connection with operation of the claimed systems…. Since SimpliSafe does not use or put such a device into service, it does not 'use' the claimed systems within the meaning of 35 U.S.C. § 271(a)." *Id.* at *5. The Court thus dismissed

the direct infringement claims.  *Id.*

Similarly, in *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, C.A. No. 16-455-RGA, 2020 WL 1333131, at *4 (D. Del. Mar. 23, 2020), the claims required a "computer network" and/or "broadcast channels," and would not be infringed if customers performed the final step to assemble the system. On summary judgment, the Court found that while Take-Two made the video game, only the customers could form the claimed systems when they played in online multiplayer modes.  *Id.*  Accordingly, it found non-infringement.  *Id.* at *7.

The facts here are materially the same as those in *Portus* and *Acceleration Bay*.  The claims here require not just a multi-vehicle compatible controller (alleged to be Geotab's GO device), but that some specific person or entity take actions to combine such controller with a vehicle with which it interacts. The Complaint does not accuse Geotab of doing so.  D.I. 1 at 3-10.  And if Omega's theory is that Geotab's customers do so, the Complaint is devoid of any specific, factual allegations that any such customer either provides the vehicle or accomplishes the accused GO device's alleged connection with the vehicle.  In short, Omega has not alleged that any one party puts the invention into service, as black-letter law requires.  *Centillion*, 631 F.3d at 1284.  This Court should dismiss Omega's direct infringement count (Count I) for failure to state a divided infringement claim.

### 3.  Omega's Induced Infringement Claims Fail for Lack of the Required Claim of Direct Infringement.

Omega also alleges that Geotab indirectly infringes the '278 Patent via inducement, by supposedly encouraging its customers to install and use the accused systems.  D.I. 1 at ¶¶ 15, 21-29 (Count II).  But absent adequate allegations of direct infringement, an indirect infringement claim cannot stand. *Limelight*, 572 U.S. at 920-21.  And as discussed above, Omega alleges no actual facts about the customers' actions.  Omega may contend that it is sufficient to make the broad conclusory statement that Geotab's customers "directly infringe" by "installing and using the systems identified," (D.I. 1 at ¶¶ 23-27), but such conclusory allegations, without more, cannot survive a motion to dismiss.  *See, e.g.*, *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)" and affirming dismissal); *Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 435 (D. Del. 2021) (Connolly, C.J.) (dismissing case— where complaint contains "conclusory statements and legal argument… I am to ignore such pleadings in a ruling on a motion to dismiss").

A plaintiff cannot bootstrap its inducement allegations onto an allegation of direct infringement where the plaintiff has not made out a plausible case of direct infringement.  *Limelight*, 572 U.S. at 920-21 (liability for induced infringement depends on showing direct infringement).  This Court has accordingly dismissed

claims of induced infringement where an underlying act of direct infringement was not adequately alleged. *See, e.g.*, *SuperInterconnect*, 2019 WL 6895877, at *3 (Connolly, C.J.) (dismissing both direct and induced infringement claims because, where plaintiff had "not plausibly alleged that [defendant] directly infringes the asserted patents, it cannot plausibly allege that [defendant] induced others to infringe the patents"); *see also Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*, C.A. No. 18-1899-CFC, 2022 WL 767513, at *1-3 (D. Del. Mar. 14, 2022) (Connolly, C.J.) (where defendant was accused of indirect infringement, summary judgment of noninfringement was proper because plaintiff had failed to show adequate evidence of direct infringement).

In short, as Omega has failed to state a claim for direct infringement, its claims for induced infringement also fail. Those being the sole asserted claims, the Court should dismiss the entire Complaint.

## VI.   CONCLUSION

For the above reasons, Geotab, Inc. respectfully requests that the Court dismiss the Complaint.

21

Respectfully submitted,

/s/ Andrew E. Russell
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
Attorneys for Geotab, Inc.

OF COUNSEL:
Michael A. Albert
Hunter D. Keeton
Susmita A. Gadre
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
(617) 646-8000

Dated: November 18, 2022

## <u>CERTIFICATE COMPLIANCE WITH WORD COUNT</u>

I hereby confirm that this document complies with the type and number limitations set forth in the Court's November 6, 2019 Standing Order. I certify that this document contains 4,977 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables, or the counsel blocks.

> */s/ Andrew E. Russell*
> Karen E. Keller (No. 4489)
> Andrew E. Russell (No. 5382)
> Nathan R. Hoeschen (No. 6232)
> SHAW KELLER LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> (302) 298-0700
> kkeller@shawkeller.com
> arussell@shawkeller.com
> nhoeschen@shawkeller.com
> *Attorneys for Geotab, Inc.*