IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OMEGA PATENTS, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 22-1044-WCB |
| § | |
| GEOTAB USA, INC., and § | |
| GEOTAB, INC., § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Omega Patents, LLC, ("Omega") brought this action against defendants Geotab USA, Inc., ("Geotab USA") and Geotab, Inc. ("Geotab Canada"). Both defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Omega has failed to sufficiently allege infringement of the asserted patent claims. Dkt. Nos. 9, 16. Geotab Canada has also moved to dismiss the complaint against it under Federal Rule of Civil Procedure 12(b)(5), contending that Omega failed to properly serve Geotab Canada. Dkt. No. 16. For the reasons set forth below, Geotab Canada's motion to dismiss is GRANTED and Geotab USA's motion to dismiss is DENIED.

**I.    Background**

Omega's complaint alleges that the defendants infringe one or more claims of U.S. Patent No. 8,032,278 ("the '278 patent"). The '278 patent is directed to a "multi-vehicle compatible tracking unit" that can enable a user to track a vehicle's location and control various aspects of the vehicle (e.g., remotely starting the engine or controlling the door locks). '278 patent, Abstract; *id.* at col. 1, ll. 30–46; *id.* at col. 3, ll. 21–26.

1

The two claims on which Omega's complaint focuses are independent claim 1 and dependent claim 12 of the '278 patent. Those claims recite as follows:

> 1. A multi-vehicle compatible tracking unit for a vehicle comprising a vehicle data bus extending throughout the vehicle, the multi-vehicle compatible tracking unit comprising:
>
> > a vehicle position determining device;
> >
> > a wireless communications device;
> >
> > a multi-vehicle compatible controller for cooperating with said vehicle position determining device and said wireless communications device to send vehicle position information;
> >
> > said multi-vehicle compatible controller to be coupled to the vehicle data bus for communication thereover with at least one vehicle device using at least one corresponding vehicle device code from among a plurality thereof for different vehicles; and
> >
> > a downloading interface for permitting downloading of enabling data related to the at least one corresponding vehicle device code for use by said multi-vehicle compatible controller.
>
> 12. The multi-vehicle compatible tracking unit according to claim 1 further comprising a housing containing said vehicle position determining device, said wireless communications device, said multi-vehicle compatible controller, and said downloading interface.

'278 patent, claims 1, 12.

Omega alleges that the defendants infringe the '278 patent by making, using, importing, selling, and offering to sell a line of products known as the "Geotab GO" products. Dkt. No. 1 ¶¶ 12–14. According to Omega, the Geotab GO products are "designed to provide vehicle tracking and interface and communicate on [a] vehicle's bus." *Id.* ¶ 13. In its complaint, Omega has provided a claim chart detailing how it alleges that the Geotab GO products infringe at least claims 1 and 12 of the '278 patent. *Id.* ¶ 14.

Geotab Canada is a Canadian corporation that has its headquarters in Oakville, Ontario. In its attempt to serve Geotab Canada with the complaint in this case, Omega hired a process server,

Lene Oest, who delivered a copy of the summons and complaint to Geotab Canada's Oakville office. Dkt. No. 24 ¶¶ 4–5. Ms. Oest left the documents with Uju Orebajo, who was a temporary receptionist assigned to staff the front desk at Geotab Canada's headquarters. *Id.* ¶ 5; Dkt. No. 18 ¶¶ 3–4. Ms. Orebajo is not employed by Geotab Canada, but is instead employed by Randstad Staffing, a temporary work agency. Dkt. No. 18 ¶ 3.

The parties dispute the events that occurred when Ms. Oest arrived at Geotab Canada's headquarters and provided Ms. Orebajo with a copy of the summons and the complaint. Ms. Oest stated in a declaration that upon arriving at the front desk, she asked Ms. Orebajo for her name and title. Dkt. No. 24 ¶ 5. Ms. Oest also stated that Ms. Orebajo represented that she was authorized to accept service of documents for Geotab Canada. *Id.* Ms. Orebajo, by contrast, stated in a declaration that Ms. Oest did not ask Ms. Orebajo about her job. Dkt. No. 18 ¶ 6. For purposes of Geotab Canada's motion, the critical facts are undisputed: Ms. Oest provided the summons and complaint to Ms. Orebajo, who was serving as a temporary receptionist and was not actually employed by Geotab Canada.

## II.     **Legal Standard**

Federal Rule of Civil Procedure 12(b)(5) allows a court to dismiss an action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). When the sufficiency of service of process is challenged, "the party asserting the validity of service bears the burden of proof on that issue." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). The Federal Rules provide that a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1); Fed R. Civ. P. 4(h)(2) (applying Rule 4(f)(1) to foreign corporations). With respect to

3

service on corporations located in Ontario, Canada, U.S. courts have consistently held that service is proper if it complies with Ontario's law regarding personal service. *See, e.g.*, *Hudson Priv. LP v. Creative Wealth Media Fin. Corp.*, No. 22-cv-5520, 2022 WL 4365573, at *3 (S.D.N.Y. Sept. 21, 2022); *Arbor Plastic Techs., LLC v. Spartech, LLC*, No. 3:21-cv-11194, 2022 WL 3223986, at *4 (E.D. Mich. July 25, 2022), *report and recommendation adopted*, 2022 WL 3215006 (E.D. Mich. Aug. 9, 2022); *Granger v. Nesbitt*, No. 4:21-cv-11066, 2021 WL 4658658, at *4 (D. Mass. Oct. 7, 2021); *Tile, Inc. v. CellnTell Distrib. Inc.*, No. 1:20-cv-428, 2021 WL 2682253, at *2 (N.D.N.Y. June 30, 2021); *AngioDynamics, Inc. v. Clarion Med. Techs.*, No. 18-30038, 2019 WL 10787926, at *11 (D. Mass. Sept. 25, 2019); *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D.N.J. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." The Third Circuit has instructed district courts to conduct a "two-part analysis" when evaluating a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court must separate the factual and legal elements of the claims. *Id.* That is, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions" set forth in the complaint. *Id.* at 210–11. Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**III.    Discussion**

The defendants' motions raise two discrete contentions. First, Geotab Canada argues that it was not properly served with the complaint because service on Ms. Orebajo was insufficient under Ontario law. Second, both defendants argue that the complaint does not adequately allege

4

infringement because, in their view, the claims require the involvement of a vehicle or a component of a vehicle, and the defendants do not sell or otherwise provide a vehicle or vehicle component together with the accused tracking unit devices.

### A. Service of Process

I begin by addressing Geotab Canada's motion to dismiss for insufficient service of process. Under Ontario law, service of process on a corporation is sufficient if the process server "leav[es] a copy of the document with an officer, director, or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business." Ontario R. Civ. P. 16.02(1)(C).[1] Omega argues that service on Ms. Orebajo was proper because she stated that she was authorized to accept service on behalf of Geotab Canada, and thus she "appeared to be in control or management of Geotab [Canada]." Dkt. No. 23 at 6.

In applying Rule 16.02(1)(C), Ontario courts do not "accept service on just any old employee." *Arbor Plastic*, 2022 WL 3223986, at *4 (citation omitted). Several U.S. courts have held that a receptionist is not authorized to accept service on behalf of an Ontario corporation if that person did not appear to be in control of or in a position of management with respect to the business. *See, e.g.*, *Granger*, 2021 WL 4658658, at *5; *Hudson*, 2022 WL 4365573, at *6; *Jerge v. Potter*, No. 99-cv-0312E(F), 2000 WL 1160459, at *1 (W.D.N.Y. Aug. 11, 2000). Similarly, the Ontario Superior Court of Justice has observed that "[w]ith all due respect to individuals who hold the position of receptionist at any corporation, it is difficult to fathom circumstances in which

---

[1] The Ontario Rules of Civil Procedure are available at https://www.ontario.ca/laws/regulation/900194.

they could" appear to be in control or management of the place of business. *Enclosures Direct Inc. v. Google, Inc.*, 2018 CarswellOnt 17241 ¶ 13 (Can. Ont. Sup. Ct. J.).

In its opposition to Geotab Canada's motion, Omega does not respond to any of the above-cited cases. Instead, Omega asserts that Ms. Orebajo's statement that she was authorized to accept service was a sufficient basis for Ms. Oest to conclude that Ms. Orebajo was, or appeared to be, in control or management of the business. Dkt. No. 23 at 6–8.

There are two problems with that argument. First, Ontario courts have made clear that "the validity of service cannot rest solely with the judgment of the person who is serving the document." *Darlind Constr., Inc. v. Rooflifters, LLC*, 2009 CarswellOnt 1618 ¶ 30 (Can. Ont. Sup. Ct. J.); *see also Arbor Plastic*, 2022 WL 3223986, at *4 ("[T]he Canadian rules do not allow for service on any employee, in any scenario, simply because the process server subjectively believes that employee to be in control."). In a case analogous to this one, the court in *Granger* held that service on a receptionist was insufficient because, even though the receptionist "very well may have appeared to be in control of the place of the business," the process server "knew that she was a receptionist." *Granger*, 2021 WL 4658658, at *5. Notably, neither Ms. Oest nor Omega disputes that Ms. Orebajo was serving as a receptionist at Geotab Canada's headquarters.

Second, "Ontario law does not allow an individual to become an agent of a corporation simply by stating that she can accept service." *Jerge*, 2000 WL 1160459, at *1. In the *Darlind* case, service was attempted on a receptionist who, according to the process server, stated "that she could accept service." *Darlind*, 2009 CarswellOnt 1618 ¶ 21. The receptionist did not recall making such a statement or being asked whether she was authorized to accept service. *Id.* ¶ 23. In view of additional evidence that the receptionist was not in fact employed by the defendant, and was not authorized to accept service of process, the court found that the plaintiff had not shown

6

that service was effected on the defendant. *Id.* ¶¶ 35–39. As in the *Darlind* case, Ms. Orebajo was not employed by Geotab Canada and was not in fact authorized to accept service of process. Even accepting Ms. Oest's assertion that Ms. Orebajo stated she was authorized to accept service, the *Darlind* case indicates that presenting her with a copy of the complaint was not sufficient to constitute proper service under Ontario law.

In support of its argument to the contrary, Omega cites a series of cases from the United States District Court for the Southern District of New York in which the courts have upheld service "where a secretary or receptionist accepted the papers and the corporate defendant in fact received them." *Arbitron, Inc. v. Marathon Media, LLC*, No. 07-cv-2099, 2008 WL 892366, at *3 (S.D.N.Y. Apr. 1, 2008) (collecting cases); *M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 659–60 (S.D.N.Y. 2006); *M. Prusman, Ltd. v. Ariel Mar. Grp., Inc.*, 719 F. Supp. 214, 219 (S.D.N.Y. 1989). Each of those cases, however, was addressed to the sufficiency of service under New York law, which recognizes service under such circumstances. Those cases therefore have no bearing on the question whether service in this case was proper under Ontario law. Omega has pointed to no case in which any court (in Canada, the United States, or elsewhere) has held that service on a receptionist was sufficient to satisfy Ontario Rule of Civil Procedure 16.02(1)(C).

In view of the above, I conclude that Omega has failed to establish that service on Geotab Canada was proper under Ontario law. Accordingly, Geotab Canada's motion to dismiss is GRANTED for insufficient service of process.[2]

---

[2] In some instances in which service has been found to be insufficient, courts have quashed service and permitted the plaintiff to attempt service again rather than dismissing the complaint. *See, e.g.*, *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992) ("[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process."). In particular, the Third Circuit in *Umbenhauer* instructed courts to consider whether "there exists a reasonable prospect that service may yet be obtained." *Id.* Because Omega has not attempted to show that there remains a reasonable prospect of effecting service on Geotab

7

B.  **Infringement**

The defendants next argue that Omega has failed to plausibly allege infringement of the claims of the '278 patent, particularly claims 1 and 12.  The defendants contend that the asserted claims "all have limitations requiring actions by two distinct entities: (1) the manufacturer and seller of a certain type of vehicle tracking device, and (2) the customers of that entity when they use the device in combination with their vehicles." Dkt. No. 10 at 1–2; Dkt. No. 17 at 3.  Omega responds that the claims require only that the claimed tracking unit be capable of being used with a vehicle, and that the unit need not be actually coupled to a vehicle and used by a customer or other user in order to fall within the scope of the claims.

**1.**  In support of their assertion that the claims require the claimed tracking unit to be coupled to a vehicle, the defendants point to two terms used in claim 1: the term "vehicle data bus," which is found in the preamble and the fourth limitation of claim 1; and the term "vehicle device," which is also found in the fourth limitation of claim 1.  In the defendants' view, the accused products by themselves do not satisfy those limitations.  Instead, they argue, those limitations are satisfied only by the vehicles and vehicle components to which the Geotab GO products are connected.  A plain reading of claim 1, however, makes it clear that those limitations refer to the capabilities of the claimed tracking unit rather than structural elements in the vehicles to which the tracking units are attached.

The preamble of claim 1 recites, in pertinent part, "[a] multi-vehicle compatible tracking unit for a vehicle comprising a vehicle data bus extending throughout the vehicle, the multi-vehicle compatible tracking unit comprising . . . ." '278 patent, cl. 1.  It is clear from that language, and

---

Canada, I will grant the relief requested by Geotab Canada and dismiss Geotab Canada from the case.  I note, however, that dismissals under Rule 12(b)(5) are without prejudice.  *Id.* at 30 n.6.  Omega is thus free to re-file its complaint against Geotab Canada if it elects to do so.

in particular from the duplicate use of the term "comprising," that it is the vehicle, not the tracking unit, that comprises a vehicle data bus.³  That is, the preamble recites (1) the tracking unit of the invention is compatible with multiple vehicles, (2) the tracking unit is for a vehicle that comprises a vehicle data bus that extends throughout the vehicle; and (3) the tracking unit comprises the elements found in the six limitations of the claim.  Thus, the preamble makes clear that claim 1 recites a tracking unit "*for a* vehicle," which plainly indicates that neither a vehicle nor a vehicle data bus extending throughout the vehicle is required to satisfy the claim.  All that is required by the preamble language is that the tracking unit be capable of interacting with a vehicle that contains a vehicle data bus extending throughout the vehicle.

The phrase "vehicle data bus" next appears in the fourth limitation of claim 1, along with the phrase "vehicle device."  That limitation requires a "multi-vehicle compatible controller" that is "to be coupled to the vehicle data bus for communication thereover with at least one vehicle device."  *Id.*  As in the case of the preamble, the plain language of that limitation—specifically, the use of the term "to be"—indicates that the claim does not require either a vehicle data bus or a vehicle device, i.e., a component of a vehicle, to be present in order for a device to infringe the claim.  That limitation requires only that the controller be capable of being "coupled to the vehicle data bus" for communication with a vehicle device.  *See id.*

In view of that plain reading of the claims, there is no force to the defendants' argument that a party must provide a vehicle or instruct its customers to couple the Geotab GO devices to a vehicle in order for the defendants to directly infringe claim 12 of the '278 patent.  It is sufficient

---

³ If that point were not sufficiently clear from the claim language, any doubt on that score would be dispelled by the Abstract of the '278 patent, which characterizes the claimed apparatus as "[a] multi-vehicle compatible tracking unit . . . for a vehicle including a vehicle data bus extending throughout the vehicle."

for Omega to allege that the defendants make, use, import, offer to sell, or sell a device that has the capabilities described in claim 1. And Omega's complaint is sufficient to allege that the defendants devices satisfy those requirements.

For the same reasons, the defendants are wrong in arguing that the claims "require more than just the accused GO device," and that they "also require an entity combining that device with the vehicles." Dkt. No. 10 at 9; Dkt. No. 17 at 17. The limitations on which the defendants rely are directed to the tracking units themselves; the references to the vehicle device, the vehicle data bus, and the vehicle device code all pertain to entities with which the tracking units are claimed to have the capacity to interact, and thus need not be present in order for infringement to be found.[4]

**2.** The defendants next contend that the specification of the '278 patent supports their argument that "the vehicle is a critical part of the claims." Dkt. No. 20 at 2. But the portions of the specification that the defendants cite provide no support at all for their argument.

In the first passage cited by the defendants, the specification describes the vehicle tracking system depicted in Figures 1 through 3 of the patent as "illustratively includ[ing] a vehicle tracking unit 25 to be mounted in the vehicle 21 . . . ." '278 patent, col. 4, ll. 32–35. As in the case of the claim language, the specification states that the tracking unit is "to be" mounted in the vehicle, which indicates that the invention is directed to a tracking unit that is designed to be attached to the vehicle, and is not directed to the vehicle itself or any component of the vehicle.

---

[4] The defendants assert that the Federal Circuit's decision in *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021), supports their position, but it does not. The court in that case held that the term "vehicle device" was properly construed to mean an "electrical or electronic component in a vehicle that can be controlled and/or the status thereof read." *Id.* at 1371. The definition of the "vehicle device" says nothing about whether the vehicle device must be part of the structure required by the claims or whether, as the claim language makes clear, it is enough that the claimed multi-vehicle compatible controller is capable of being coupled to the vehicle data bus for communication with a vehicle device.

The second portion of the specification cited by the defendants is the statement that the vehicle tracking unit in Figures 1 through 3 is "illustratively connected to a separate vehicle security system 27 as may already be installed in the vehicle 21 from the factory or installed as an aftermarket product." '278 patent, col. 4, ll. 41–44.  That passage points to the fact that the tracking device in practice can be connected to a vehicle security system that may previously have been installed in the vehicle.  It does not suggest that the vehicle or the vehicle security system is part of the invention.

The same is true for the third passage from the specification that the defendants cite, which refers to the embodiments described in the specification.  That passage states that the "tracking device may communicate with one or more other vehicle devices via a vehicle data communications bus." '278 patent, col. 22, ll. 1–3.  The embodiments referred to in that passage all explain how the tracking device can be usefully employed in conjunction with the vehicle data communications bus on a vehicle.  But that does not alter the fact that the claims are directed not to a system that includes the vehicle, a vehicle device, or a data communications bus on a vehicle, but solely to the tracking device, which has the capability of communicating with vehicle devices over the data communications bus on the vehicle.

**3.**  The manner in which the claims of the '278 patent are drafted—to focus on the capability of a device to interact with other components—is a common patent drafting practice, and is understood to mean that the claims are limited by the structure and capabilities of the device itself, not the components with which the device is capable of interacting.  As the Federal Circuit has held, "to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010) (citing *Intel Corp. v. Int'l Trade Comm'n*, 946

11

F.2d 821, 833 (Fed. Cir. 1991)); *see also INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371–74 (Fed. Cir. 2022) ("for performing"-type language is directed at a device's capability to perform a function and does not require that the device actually perform the function); *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 828 F. App'x 707, 714 (Fed. Cir. 2020) ("for" language is "language of capability"); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *TQ Delta, LLC v. 2Wire, Inc.,* No. 13-1835, 2021 WL 2649739, at *5 (D. Del. June 28, 2021); *Cradle IP, LLC v. Texas Instruments, Inc.*, 5 F. Supp. 3d 626, 636 (D. Del. 2013). That holding is consistent with the more general principle of patent law that "a patentee can generally structure a claim so that it captures infringement by a single entity." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 494 (D. Del. 2022) (citing *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1309 (Fed. Cir. 2011)).

**4.** The defendants also argue in their motion that Omega has failed to show infringement under a theory of divided infringement, Dkt. No. 10 at 6; Dkt. No. 17 at 17–19, or under a theory of induced infringement, Dkt. No. 10 at 7; Dkt. No. 17 at 20–21. Both of those arguments, however, are premised on the defendants' primary argument that the claims require "that some specific person or entity take actions to combine [the claimed] controller with a vehicle with which it interacts." Dkt. No. 10 at 11; Dkt. No. 17 at 19. Having rejected the argument that proof of infringement of claims 1 and 12 requires a showing that the claimed device is actually coupled to a vehicle, the court must also reject the defendants' related contentions regarding divided and induced infringement.

Omega's complaint alleges indirect infringement in one respect: It alleges that the defendants are liable for infringement under a theory of induced infringement when the users of

the tracking device, such as customers, use the device as directed by the defendants.[5]  In light of the analysis of the claim language set forth above, those allegations are sufficient to survive the defendants' motion to dismiss.

**5.**  Finally, citing *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328–31 (Fed. Cir. 2017); *Centillion Data Sys. v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011); *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455, 2020 WL 1333131, at *4 (D. Del. Mar. 23, 2020); and *Portus Singapore Pte Ltd. v. SimpliSafe, Inc.*, No. 19-480, 2019 WL 6071180, at *4–5 (D. Del. Nov. 15, 2019), the defendants contend that the asserted claims required not just a multi-vehicle compatible controller, but "that some specific person or entity take actions to combine such controller with a vehicle with which it interacts," and that the complaint did not contain "specific, factual allegations that any . . . customer either provides the vehicle or accomplishes the accused . . . device's alleged connection with the vehicle." Dkt. No. 10 at 10–11; Dkt. No. 17 at 17–19.  However, in each of the cited cases, all of which involved system claims, there was a question whether a single party constructed or used all the recited components of the system.  Unlike the claims at issue in those cases, the asserted claims in this case are not system claims, but apparatus claims that are directed to a discrete, completed apparatus, and there is no question that customers who use the accused tracking devices in the

---

[5] The defendants argue in passing that Omega has not validly alleged that the users of the accused tracking devices (such as the defendants' customers) infringe the asserted claims because the claim charts in the complaint "make no allegations relating to the customers' actions." Dkt. No. 10 at 10; Dkt. No. 17 at 18.  It was not necessary for the claim charts in the complaint to refer to the customers.  Count II of the complaint specifically alleges that the customers used the devices "as encouraged, promoted, and instructed" by the defendants and that the defendants were aware of the '278 patent and knew that the acts of customers would constitute infringement. Dkt. No. 1 ¶¶ 23–25.  The allegations in the complaint directed to that issue were sufficient to state a claim of induced infringement by the defendants.

manner described in the complaint would infringe. The system claim cases cited by the defendants therefore do not support their argument for dismissal.

## IV. Conclusion

In summary, Geotab Canada's motion to dismiss is GRANTED because Omega has not effected proper service on Geotab Canada. Geotab USA's motion is DENIED because Omega has plausibly alleged direct and induced infringement of claims 1 and 12 of the '278 patent. Geotab Canada will be dismissed from this action without prejudice.

IT IS SO ORDERED.

SIGNED this 10th day of March, 2023.

*William C. Bryson*
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE